1

1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2
   ********************************
3
   UNITED STATES OF AMERICA
4
5  vs.                              Criminal No. 11-cr-30017-NMG

6  EVRIPIDES GEORGIADIS
                   Defendant
7
   ********************************
8

9

10

11 BEFORE:   THE HONORABLE NATHANIEL M. GORTON

12

13

14
                        SENTENCING HEARING
15

16

17

18        John Joseph Moakley United States Courthouse
                       Courtroom No. 4
19                     One Courthouse Way
                       Boston, MA 02210
20

21                     September 9, 2014
                         3:10 p.m.
22

23

24        Kathleen Mullen Silva, RPR, CRR
                    Court Reporter
25               kathysilva@verizon.net

1    APPEARANCES:

2

     For the United States of America:
3    Alex J. Grant, Assistant United States Attorney
     United States Attorney's Office
4    United States Courthouse
     300 State Street, Suite 230
5    Springfield, Massachusetts 01105-2926
     413-785-0395

6

7    For Defendant Evripides Georgiadis:
     Andrew G. Levchuk, Esquire
8    Carol E. Kamm, Esquire
     Bulkley Richardson & Gelinas
9    1500 Main Street, Suite 2700
     P.O. Box 15507
10   Springfield, Massachusetts 01115-5507
     413-272-6285

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2               THE CLERK:  This is criminal action number

3    11-30017, the United States of America versus Evripides

4    Georgiadis.  Will counsel please identify themselves for the

5    record.

6               MR. GRANT:  Alex Grant for the United States.  Good

7    afternoon, Your Honor.

8               THE COURT:  Mr. Grant.

9               MR. LEVCHUK:  Andrew Levchuk for the defendant, Your

10   Honor.

11              THE COURT:  Mr. Levchuk, Mr. Georgiadis and Ms. Kamm.

12              MS. KAMM:  Carol Kamm.

13              THE COURT:  And we have an interpreter,

14   Ms. Tsaniklides.  Would she please be sworn.

15                   INTERPRETER, SWORN.

16              THE COURT:  And Ms. Marcy here from probation.  Good

17   afternoon to her.

18              We are here on the sentencing of Mr. Evripides

19   Georgiadis, and I have received and read the presentence

20   report, the defendant's sentencing memorandum to which are

21   attached a group of letters in support of the defendant --

22   actually, there were two separate groups that were submitted to

23   me, totaling nine letters, and there was also an exhibit with

24   some photographs and some indication of certificates of

25   completion of matters done while the defendant has been

1    incarcerated.

2         I have also received the defendant's statement

3    regarding acceptance of responsibility and the government's

4    sentencing memorandum.  Also a group of victim impact

5    statements.  I believe there are six of them that were

6    submitted originally in connection with the sentencing of

7    Mr. Condo, but are also applicable to this sentencing.  And I

8    believe those are all of the writings that I have received.

9         Is there anything that I haven't mentioned?  Well,

10   there was also the government's motion for an order of

11   forfeiture which was also submitted simultaneously.  Is there

12   anything else that I haven't mentioned that I should have

13   received in writing?

14        MR. GRANT:  No, Your Honor.

15        MR. LEVCHUK:  Your Honor, I just think at docket

16   number 404 we filed our objections to the presentence report,

17   but those are included in the presentence report itself.

18        THE COURT:  I have those objections, and that's a good

19   segue into that right now, Mr. Levchuk, because we need to deal

20   with the objections to the presentence report.  There were none

21   submitted on behalf of the Government, but there were 12

22   submitted on behalf of the defendant.  And as I interpret them,

23   the substantive objections are all contained within objections

24   number 6 and 7.  They are also -- those objections are also

25   referred to in many of the other objections, but I treat them

1   as informational.

2         Going through the objections one by one, the first

3   objection is informational; and then the second objection has

4   to do with the description in the presentence report of the

5   defendant's conduct, and I am interpreting that as

6   informational even though it is later objected to

7   substantively.

8         Objection number 3 has to do with the description of

9   the defendant's role in the offense.

10        Objection number 4 has to do with the presentence

11   reports of overt acts.

12        Objection number 5 has to do with the defendant's

13   alleged acceptance of responsibility, which the most recent

14   filing pertains to, that we can deal with at a later time.

15        Then as I see it, objections 6 and 7 are substantive

16   objections.  Within objection number 6, the defendant has

17   objected to the amount of loss attributable to him, the number

18   of victims that should be deemed be to his responsibility,

19   whether or not an aggravating role should be assigned.  And, in

20   fact, he claims that I should reduce by two levels his offense

21   level because he was a minor participant.  And finally whether

22   he was in a position of trust.

23        Do I interpret your objections correctly, Mr. Levchuk?

24        MR. LEVCHUK:  You do, Your Honor.

25        THE COURT:  All right.  Then we'll deal with those

1    substantive objections one by one.  If you wish to further

2    amplify any of your objections that you've made both in the

3    presentence report and in your memorandum, sentencing

4    memorandum -- I must say that I believe the probation officer

5    is correct, with the exception of the enhancement for

6    aggravating role.  I agree with the government's position on

7    that and your objection.  So it's a unanimous objection and the

8    Court agrees with it, that this defendant should not be

9    attributed a two-level increase for aggravated offense under

10   3B1 point whatever it is.  I've lost the number.  3B1.1 I think

11   it is.  But other than that, I think that the attribution of

12   increases in offense level and the amount of loss are properly

13   attributed, but I will hear you in your opposition if you wish

14   to further amplify your arguments of which I am aware.

15        MR. LEVCHUK:  Thank you, Your Honor.  I won't speak

16   long on these issues.  I think we've said what we had to say in

17   our objections, as well as in our sentencing memorandum.  You

18   know, I don't disagree that in conspiracy cases generally the

19   entire amount generally is attributable, the loss amount, to

20   everyone.

21        I guess our issue with that in this case is, you know,

22   we see Mr. Condo as an unusual figure in this conspiracy

23   because he so clearly, as the court heard during the trial,

24   drove this conspiracy along.  And, in fact, all three of the

25   co-defendants we believe were very much beneath him in terms of

1    their influence on the direction of the conspiracy, their

2    dealings with the victims, their role in sort of covering

3    things up when things started to go bad.  So for that reason,

4    this is an unusual case and we would request -- that's why we

5    request that the Court not attribute the entire loss amount to

6    this defendant, but I understand the Court's ruling.

7         Going on, though, I believe there was also an

8    enhancement for a position of trust.

9         THE COURT:  Yes.

10        MR. LEVCHUK:  And I would object to that.  I think

11   virtually every victim that took the stand -- and it's

12   difficult to say for certain without a transcript in front of

13   you -- but they had turned their money over to Mr. Condo and

14   dealt with Mr. Zanetti almost invariably before they met

15   Mr. Georgiadis.  So I think to the extent an abuse of trust

16   enhancement is appropriate, it would only be appropriate as to

17   Mr. Condo.  I simply don't see it for Mr. Georgiadis.  He, you

18   know, received the limited funds that he got, as we've

19   described in our sentencing memorandum.  He was hoping to get

20   his alternative energy ventures off the ground with those, but

21   he did not have the kind of relationships with the victims

22   which would merit such an enhancement.

23        I guess the final point I would make is on the role of

24   the offense, not only should there be no aggravating --

25   enhancements for an aggravating role, but I think there should

1    be a credit of two points for a minimal role, because --

2              THE COURT:  You don't mean minimal.  You mean minor.

3              MR. LEVCHUK:  Minor.  Forgive me.  Just because I

4    think Mr. Georgiadis hopped on the train after it was rolling

5    in our view.  Now, anyone becomes a conspirator when they hop

6    on that train.  But in this particular case I think things were

7    happening that would have been happening without him.

8    Mr. Condo was simply that good.  He convinced any number of

9    people from whom the court heard at trial who came -- what

10   struck me was they came from all walks of life, very different

11   business backgrounds.  And Mr. Condo had a sort of mesmerizing

12   effect on them.  There's really no other way I can describe it.

13   I've never seen anything like that.  So in relation to that, I

14   believe Mr. Georgiadis deserves those two points off for being

15   a minor participant.

16             THE COURT:  All right.  Thank you.

17             Mr. Grant, do you wish to respond?

18             MR. GRANT:  Yes, Your Honor.  I addressed this in

19   writing, so I won't belabor the point.

20             I do want to take issue specifically with this

21   argument that was just made that Mr. Georgiadis hopped onto a

22   train and somehow ought to be considered less culpable and be

23   given this minor role adjustment.  The evidence at trial is

24   simply not what the defense is suggesting in terms of timing.

25   One of the letters that they themselves just presented to you

1    from Gino Laitano, who was a witness at the trial, said he met

2    Mr. Georgiadis in early 2007.  So when Mr. Levchuk suggests

3    that there's no evidence that he was not there at the outset,

4    that's simply not true.

5          The other email that we entered into evidence was in

6    October of 2007.  This is several months before the first

7    deposit was made, and that email was setting up the email

8    account for Dupont Alliance for Mr. Georgiadis.

9          Third, he was there to set up the first bank account

10   for BBDA Global Investment Fund, and that was the name of the

11   fund.  This is what they were using to take in the money.  So I

12   really take issue with this notion that he was anything other

13   than a partner because that's what the witnesses testified to,

14   that he was a partner with Mr. Condo.  They presented

15   themselves as partners.  As the probation department correctly

16   noted, he presented himself.  He was presented by other people

17   as a member of the fund and the European representative of the

18   fund.  So I think it would be a strange view of the evidence to

19   say that Mr. Georgiadis is a minor participant when, in fact,

20   he was the one who controlled the money along with Mr. Condo

21   and Mr. Condo's brother.  And that's what distinguishes him,

22   among other things, from the two other co-defendants that he

23   would like to compare himself to.

24          THE COURT:  All right.  Thank you.  I have heard

25   enough on the objections.  I agree with the Government that the

1    defendant is properly attributed with the loss of 7 million

2    dollars.  He was up to his eyeballs in this conspiracy, which

3    defrauded multiple developers of that amount of money.  It is

4    absolutely appropriate that the loss be attributed to him and

5    that he was, of course, involved in a conspiracy with more than

6    ten victims.  It doesn't matter whether he had personal contact

7    with those victims or even met them.  He was part of a

8    conspiracy that dealt with many more than ten victims.

9    Therefore, that two-level enhancement is clearly warranted.

10        Mr. Georgiadis was not a minor participant.  I believe

11   he was, in fact, a partner of Mr. Condo, a junior partner,

12   albeit, but nevertheless a partner who held himself and the

13   conspiracy held him out to be the European connection with

14   these billionaires that were going to loan all this money.  So

15   he did, in fact, abuse a position of trust as that enhancement

16   is defined in the sentencing guidelines.

17        I agree, however, with both defendant's counsel and

18   the Government that no aggravating role should be attributed to

19   Mr. Georgiadis because I don't think he was a leader or

20   supervisor of other members of this conspiracy.  He doesn't get

21   a minus two for a minor role but he doesn't get a plus two for

22   being a leader either, in my judgment.

23        But having ruled on all of those, the next objection,

24   that is objection number 7, is a parallel objection.  It

25   relates to the money laundering count as opposed to the fraud

1    count, which is the subject matter of objection number 6, and

2    it too objects to the attribution of a two-level increase for

3    the defendant's aggravating role.  The same reasoning applies,

4    of course, with this objection as with the other.  And without

5    further ado, I can sustain objection number 7 that would have

6    otherwise added a two-level increase to the money laundering

7    count contribution to this presentence report.

8            Objection number 8 is a derivative objection.  It

9    simply has to do with the results of all of the enhancements or

10   lack of enhancements, and that objection is overruled

11   accordingly.

12           Now, I understand objection numbers 9, 10, 11 and 12

13   have all been resolved, and that that leaves us having dealt

14   with all of the objections.

15           Is that the case, Mr. Levchuk?

16           MR. LEVCHUK:  That is correct, Your Honor.

17           THE COURT:  And Mr. Grant?

18           MR. GRANT:  Yes.

19           THE COURT:  All right.  Then we will turn to the

20   establishment of the appropriate guidelines in this case.

21   Recommendations in that regard are made at the presentence

22   report starting at page 10 wherein I am advised that the

23   appropriate guideline manual is the most recent one, the 2013

24   manual, and that within that manual we're dealing with two

25   separate guideline sections, both of which coincidentally yield

1    the same total offense level.

2         The first is the money laundering conspiracy count

3    which deals with 2S1.1.  And the second one has to do with the

4    fraud, which is carried under 2B1.1.  Dealing first with that

5    one, the base offense level is 7.  Because the defendant is

6    being held responsible for a loss of 7.9 million dollars, a 20-

7    level increase is warranted pursuant to (b)(1)(k) of that same

8    guideline.

9         Again, because the offense involved more than ten

10   victims, a two-level increase is warranted under subsection

11   (b)(2)(A)(i) of the same guideline.  And further a two-level

12   increase for having used sophisticated means is warranted under

13   subsection (b)(10)(C) of the same guideline.

14        I am not going to accept a recommendation of the

15   probation department that I should enhance further under the

16   3B1.1(c) for aggravating role because I find the defendant was

17   not a manager or supervisor in this particular case.  However,

18   he was purported to be the European representative of the fund

19   and provided sufficient indicia to be held responsible as a

20   position of trust and, therefore, under 3B1.3 an additional two

21   levels is warranted.

22        And that all yields a total offense level of 33 when

23   one applies the 3 level downward -- no, there's no downward

24   adjustment at all.  That ends up at 33.

25        The money laundering counts, again under the

1    conspiracy section of 2S1.1, yields a base offense level of 31.

2    A two-level increase is warranted because the defendant was

3    convicted under Title 18 of the United States Code, Section

4    1956 and under subsection (b)(2)(b) of that same guideline

5    section, the defendant gets that enhancement.  However, again,

6    the court will not  agree with the recommendation that he be

7    given an increase for aggravated offense, that is, being a

8    leader or a supervisor in this case, and, therefore, the

9    adjusted offense level under the money laundering counts is 33

10   as well.

11          The defendant has no prior convictions and, therefore,

12   the guideline range under these particular findings, 33 at 1,

13   is 135 to 168 months.

14          Do counsel agree with the Court's calculations?

15          MR. GRANT:  Yes.

16          MR. LEVCHUK:  Yes, Your Honor.

17          THE COURT:  All right.  Then I am aware of the

18   recommendations made in your respective briefs, but I'll hear

19   from counsel now with a final recommendation.  First Mr. Grant.

20          MR. GRANT:  Thank you, Your Honor.  I won't repeat

21   what I've said in my sentencing memo, but I do want to address

22   some of the things that the defense has said in its sentencing

23   recommendation.  Defense counsel refers to Mr. Georgiadis's as

24   exemplary life.  During the trial you heard character witnesses

25   about his background.  So I think you're in a good position to

1    understand what happened before.

2            What's missing, even now, is any kind of explanation

3    or really -- this is what I think is critical -- is a reckoning

4    with what he's done.  Now, normally defendants like to say that

5    this was some sort of aberrant behavior, but the defendant has

6    claimed he has done nothing wrong.  So what is aberrant about

7    it?  The defendant claims that Mr. Condo ruined his life.  But

8    what's missing again is anything explaining how it was that

9    Mr. Condo influenced him.  That certainly didn't come out

10   during the trial.  It didn't come out through the numerous

11   emails that Your Honor saw that came into evidence between the

12   two of them.

13           They seemed to be very fond of one another.  There's

14   references to love between the two of them as sort of exuberant

15   expressions of friendship.  We've heard nothing about

16   psychological issues, that Mr. Georgiadis had drug use,

17   alcohol, gambling debts, coercion; nothing.

18           What you're being presented with is a middle-aged man,

19   well educated, who's had responsible jobs in his life and

20   coming from a good family.  I mean, this is somebody who you

21   would think would be one of the last people who could be easily

22   influenced by somebody else.  In fact, there really is no

23   evidence of him being influenced, but rather a voluntary

24   decision to enter into a partnership.

25           I would say that what you've heard about

1    Mr. Georgiadis having the benefit of his education and the

2    benefit of his experience in the banking and finance world is

3    that he used that information to perpetrate this fraud.  The

4    letters of credit that were so important in this case were

5    created by Mr. Georgiadis.  The website content -- some of it

6    came into evidence -- emails, he's using it to create the aura

7    of legitimacy of Century Bank.

8         What was extraordinary about this case, I submit, is

9    not that people got cheated out of their money in this advance

10   fees case.  That happens fairly often and that's regrettable.

11   What's extraordinary about this case is how long people kept

12   hanging on believing.  One witness that you heard from, Your

13   Honor, was a man by the name of Kyle Mowitz.  He was the last

14   man to give a deposit.  It was two and a half years after the

15   first deposit and just three weeks before we raided their

16   office and executed a search warrant, which essentially put an

17   end to this scheme.

18        Kyle Mowitz spoke to me and spoke to Mike Brin, who

19   you also heard from, before he made that deposit.  We were

20   investigating.  We were in the unique position of watching this

21   crime going on, but we did not grasp it.  You heard about Mike

22   Brin spending hundreds of hours.  One of the great regrets that

23   I have is that we were not able to stop it sooner, that we were

24   unable to capture more of the money that they had stolen.  And

25   it was because of the things that Mr. Georgiadis helped to do

1    to create this air of legitimacy that kept people hanging on.

2          We had a lot of obstacles to face in investigating

3    this case, but probably the biggest one was the willingness of

4    people to believe that their dreams were going to be realized.

5    One of the people who gave a deposit, his name was David Young.

6    He didn't testify in this case.  But I asked him during the

7    investigation, how did it feel when you sat down in Clearwater

8    and they said that you were going to get your funding and that

9    you could build this project that was going to cost a half a

10   million dollars, and that they would be worth a billion

11   dollars, which it could be sold, and that he would realize 500

12   million dollars once it was built.  And he said, "It was the

13   best day of my life."  It's that lure that explains what

14   happened in this case.  Imagine what the best day of your life

15   is.  You will do anything to hold onto that.  That's what they

16   were promising.  It wasn't just money.  It was promising

17   something to realize your dreams.

18          And the people that Mr. Georgiadis cites, some of whom

19   wrote letters, Kelly Photos, Gino Laitano, Frank Parker, Rod

20   Kreie, they did not understand the scope of what Mr. Georgiadis

21   did, because a lot of what he was doing was behind the scenes

22   with Mr. Condo.  They didn't have access to the emails that

23   were going on between the two of them.  I would submit to you

24   that their conclusion about Mr. Georgiadis's culpability would

25   be very different if they knew that information.

1          Now, during the trial Mr. Georgiadis's lawyer claimed

2    that he was innocent because he was interested in green

3    technology in Greece.  I have no doubt that he had some

4    interest in that.  But that was not an excuse and it never will

5    be an excuse to steal other people's money.

6          Danny Boyce was one of the victims who submitted a

7    victim impact statement.  He also had great dreams of green

8    energy.  One of the slides that I showed during my closing were

9    pictures from a site visit.  You probably can't see it that

10   well from here.  But this was a real place.  He had dreams too.

11   One of the things that he told you, Your Honor, is that he's 62

12   years old.  He gave half of his retirement money to make this

13   deposit, and that he's going to have to, quote, "continue

14   working until age 70 plus or health prevents.  My job,

15   construction, keeps me away from my family for weeks at a

16   time."

17         So as you consider what kind of sentence to impose on

18   Mr. Georgiadis, I would ask you to consider the impact that his

19   conduct had on others.

20         Finally, I'd like to address the issue of acceptance

21   of responsibility.  I read it literally minutes before coming

22   in here.  It was filed just a half hour before the sentencing.

23   So I'll attempt to address it.  I think the most important part

24   is that Mr. Georgiadis says that he apologizes, and that he now

25   understands that his conduct contributed to the crimes.  Again,

1   what's missing is what realization did he come to and when?

2   Was it a half hour ago?  Was it a few days ago?  He was in this

3   conspiracy from the beginning.  He didn't need a realization.

4            I would submit to you that the words that you're

5   hearing are pleas for mercy that are not authentic.  I would

6   also submit that you should not be swayed by some of the

7   letters that you've seen by people who have seen the good side

8   of Mr. Georgiadis.  I have no doubt he was a fun-loving man

9   when he was spending money that he had stolen.  I'm sure he was

10   the life of the party with Kelly Photos.  He was probably even

11   generous with money that he had stolen, taking Kelly Photos'

12   mother to Greece.  Even Gino Laitano, the letter that you

13   received from him, after having been excoriated by the defense

14   during the trial, as Mr. Georgiadis attempted to blame

15   everybody but himself, I would submit that letter by

16   Mr. Laitano says a lot more about his character, the fact that

17   after all of that, that he's willing to say a good word about

18   Mr. Georgiadis.  It says a lot more about him than it does

19   about Mr. Georgiadis.

20            And I would submit that the letters that you've

21   received from the clerical people who have written on his

22   behalf do not really understand what he's done.  They speak in

23   generalities.  I'm sure they're good people, but those letters

24   never come to grips with what he did and why we're here.  I

25   submit that nothing that has been submitted to you does that.

1          So in this case, the Government is asking for a

2     sentence of 109 months, which is actually below the low end of

3     the range.  I've explained why we're willing to do a

4     recommendation below the low end of the range, but I would ask

5     that the court not go any lower than that.  Thank you.

6          THE COURT:  All right.  Thank you.

7          Mr. Levchuk.

8          MR. LEVCHUK:  Yes, thank you, Your Honor.

9          We're not here to retry the case.  The jury has

10    spoken.  The defendant is guilty, and what is really -- there

11    seems to be two questions before the court.  The first is where

12    does Mr. Georgiadis fit in among the four charged and three

13    sentenced co-defendants?  And what is an appropriate and fair

14    sentence?  And we've gone through the law on what that means in

15    our memorandum and I won't repeat it.

16         Then the second question is how do you treat someone

17    who has exercised their constitutional right to go to trial.

18    And this was not just any trial.  This was a lengthy hard-

19    fought three-week affair.  And it involved a lot of effort by

20    everyone in this room.

21         But nonetheless, one has a right to that.  And

22    defendants certainly get a benefit and a break for pleading

23    guilty and short-circuiting that process.  But there should be

24    a limit to that.  One shouldn't be punished for exercising

25    one's rights.

1        I don't agree with Mr. Grant that we're denying

2    culpability at this stage of the game.  As I said, we're

3    accepting the verdict and trying to determine where is an

4    appropriate spot for Mr. Georgiadis.

5        When we look at where everybody wound up, we have

6    Mr. Condo, who everyone in the room admits was the ringleader

7    of the scheme.  He received a sentence of 90 months, having

8    pled guilty, and having done everything and much more, in our

9    view, than Mr. Grant just described.  Mr. Zanetti, on the other

10   hand, received a sentence of 37 months.  We see Mr. Georgiadis

11   as sandwiched between those two co-defendants, with the

12   understanding that you're going to get more -- you're going to

13   get a little higher sentence if you go to trial.

14       But I understand the court, having rejected our

15   guidelines suggestion and our objections to the presentence

16   report, which we respectfully reserve, now has to decide what

17   to do with the range the Court's arrived at.  So I offer two

18   suggestions.

19       The first is that I think Mr. Georgiadis has accepted

20   responsibility.  He's in a difficult spot because he's trying

21   to preserve his rights to appeal, and if we were ever

22   successful in obtaining a retrial he has to be careful as to

23   what he says.  On the other hand, I think he's gone pretty far

24   and I think the court will hear from Mr. Georgiadis that he

25   fully accepts his responsibility for what happened here.  The

1    crime was horrible.  People are out money, and I think he feels

2    that and understands it.

3            And as Mr. Grant said, while the clerical -- you know,

4    the letters from Father Zymaris and Father Andrew are from

5    people who deal with Mr. Georgiadis in a much different

6    context.  And I'm sure the court has seen over the years a

7    number of people seeming to finding religion after the fact

8    rather than before.  I think they've seen in this case a

9    genuine change, if you will, from the man they first

10   encountered to the man they know now.  That's particularly

11   clear in Father Zymaris's letter.

12           So I firmly believe that a sentence of 46 months would

13   be sufficient, and no longer than necessary to meet the

14   requirements of Section 3553(a).

15           In particular I think the court can be confident, and

16   I can speak for this, having dealt with Mr. Georgiadis, that no

17   court anywhere will ever see him again.  This has ruined his

18   life and he is a beaten man.  I think anyone aware of what has

19   happened to him and the level to which his life has fallen

20   would be deterred from ever engaging in similar activity.

21           And I think to protect the public, Mr. Georgiadis has

22   already served more than two years.  He served almost a year in

23   a Croatian jail, which is very hard time, before his

24   extradition, and I think when he gets out -- he'll be 50 next

25   spring -- he will be somewhere in his early to mid fifties,

1   hopefully not his late fifties, and we provided the recidivism

2   statistics which the Government also attached to Mr. Zanetti's

3   -- their sentencing memorandum from Mr. Zanetti.  I think the

4   chances of recidivism in a white collar fraud case, the

5   statistics speak for themselves.  They're very low.

6          It strikes me even if the court thinks 46 months is

7   too low, if you look somewhere right between Mr. Zanetti and

8   Mr. Condo, and the court heard tons of evidence about

9   Mr. Zanetti and his activity during the trial -- so I won't

10   belabor that -- that would be a sentence of around 63 months, I

11   believe.  And, again, a fair sentence, one that puts

12   Mr. Georgiadis in jail for approximately three more years, but

13   at the same time recognizes him as the junior partner, to use

14   the Court's phrase, that he was.

15          I'll also note that Mr. Georgiadis has a wonderful

16   family and I've gotten to know them extremely well.  Again, you

17   wonder how someone with that wonderful family and a good

18   education could wind up doing what Mr. Georgiadis did.  And

19   there you have an argument for a variance for aberrant

20   behavior.

21          Mr. Georgiadis's cousin, Dr. Christos LaPoste, who's a

22   psychiatrist over in Greece, and is also a member of the

23   American Psychiatric Association, is here in the room.  And he

24   has been a source of strength for both Mr. Georgiadis and me

25   and source of assistance throughout.

1          He has a friend, Dr. Frederick Carducci, who's here.

2     He'll have a lot of support when he gets out.  How he found

3     himself in the middle of this, how he lost his way, which is

4     what Mr. Grant -- the answer he's looking for, I don't know if

5     there's an answer to that.  I don't know that Mr. Georgiadis

6     knows.  You know, that's -- all I can say is that however it

7     happened, the people who wrote the letters, myself, Father

8     Zymaris, have all seen a change.

9          So I would ask that the junior partner be sentenced as

10    a junior partner and that his exercise of his right to trial,

11    while burdensome for us all, is something to celebrate too here

12    in our democracy, rather than to constantly discourage.

13         Look at the victim impact statements, and in

14    particular Mr. Grant referred to Danny Boyce's victim impact

15    statement.  And if you look at that one, in the presentence

16    report you will find he mentions Mr. Condo.  And Mr. Boyce

17    twice refers to Mr. Condo and doesn't mention Mr. Georgiadis.

18    I don't think Mr. Georgiadis is mentioned in any of the victim

19    impact statements that are annexed to the presentence report.

20    I think the Court's drawn the appropriate conclusion from that.

21         Incarceration is expensive, approximately $30,000 a

22    year per person.  And Mr. Georgiadis has nobody here.  If the

23    court sentences him to whatever the court sentences him, he

24    will be alone, wherever BOP places him, without friends,

25    without family.  We'll make a recommendation on that as to

1    placement at the end of the process, but it would be very

2    difficult for him.

3            So in conclusion, I think I'd like to just invite the

4    court to sentence Mr. Georgiadis between Mr. Zanetti and

5    Mr. Condo, not at the level that the Government has

6    recommended, which is three times Mr. Condo's sentence.  But --

7            THE COURT:  You mean Mr. Zanetti's?

8            MR. LEVCHUK:  I'm sorry.  Mr. Zanetti's sentence.

9    Somewhere between those two I think would be appropriate, and

10   would meet all of the goals of sentencing.

11           And now I would like to say that I think

12   Mr. Georgiadis would like to speak to the court and turn the

13   floor over to him.

14           THE COURT:  Mr. Georgiadis may make a statement before

15   he is sentenced.

16           MR. GEORGIADIS:  Thank you.  I have to apologize for

17   my English.  It's not the way I want it to be.

18           Your Honor, Your Honorable Court of the United States

19   Government, I would like to apologize to the court, Your Honor,

20   and to the Government for wasting both the Court's and the

21   government's valuable time and resources in this matter.

22           Your Honor, I assure you you have heard this a

23   thousand times over your career and over your years as a judge.

24   Now it's time for me to talk about all of the innocent victims

25   who had their lives changed forever because of the actions of

1    Mr. Condo and others, and I realize that I was a part of that.

2            I would like to apologize to all the innocent victims

3    for my own actions.  It's important to me to express to all the

4    innocent victims in this matter how truly sorry I am for my

5    actions.

6            I'm truly sorry and it's my hope that this spirit of

7    what I'm trying to convey to all of the innocent victims, that

8    my apology of my own actions of their losses is both sincere

9    and from my heart.  It is important to me and I hope that it's

10   important to them as well if they accept my apology.

11           I have learned in my own life experiences that people

12   who have hurt or wronged their fellow human beings and that

13   wrong was revealed to the victim and to the person who has made

14   the mistake apologize for his or her mistake, the victim can

15   wonder if the apology or sorrow that they hear is both genuine

16   and sincere.  So it is important that I convey my own apology

17   to each victim in this matter in a way that they can believe

18   that I'm trying to say and express to all of them as a human

19   being person and a man who is truly sorry, and that they can

20   find a way to forgive me.  I'm deeply remorseful and regretful

21   to each one of them, to each one of them.

22           Your Honor, when I was arrested in the former

23   Yugoslavian country, the Republic of Croatia, in May 2012 and I

24   was extradited to the United States on February 19, 2013, I

25   can't remember exactly what I was thinking and how I felt when

1   I was placed in the jail of a former Communist government.  I

2   got on my knees and I prayed and I prayed and asked God to give

3   me strength to endure from this situation I found myself in,

4   that I was at the source of my strongest faith.  Since that

5   day, I have, in fact, endured some of the darkest hours and I

6   have learned that God's greatest gifts come through great

7   trials and pain, thank the Lord.

8          When I arrived to the United States to face these

9   matters against me, I felt strongly that I would surely prove

10  my innocence in these matters and not be standing before this

11  Honorable Court for sentencing.

12         Your Honor, Honorable Court, the honorable

13  representatives of the United States Government, I was not born

14  in this country.  I was not raised in this country.  I don't

15  speak your language until at least -- not at the level I would

16  like to.  I have no family in this country.  I don't have any

17  friends.  I have no ties with this great country.  I don't

18  belong here.  I messed up with my life and I have lost

19  everything.  I messed up with my family's life.  And as I

20  understand today I messed up with other people's life and I

21  have so many regrets.

22         I don't know what went wrong with me.  I was born in a

23  small city in Greece and I am the son of an orphan father and

24  an orphan mother, having lost their father in the Second World

25  War, who sacrificed himself as an officer trying to defend his

1    house from the unfair attack of the Nazis.  An orphan life is a

2    terrible situation which I would not wish anyone to lead.

3            Since 2006 I was working as a president and CEO, chief

4    executive officer in a large company under the name PEC in

5    Athens, Greece, owned by one of the largest conglomerates in

6    Greece.  I was happy with my life.  I was minding my business

7    and I was enjoying the safety of my family and the safety of my

8    country's small joys provided by the law.

9            I was an open-minded person and I was following the

10    new market tendency on the green energy projects.   That's how

11    I ended up in the United States after getting approval and

12    going through the training process of the United States

13    Embassy.  But both the invitation of coming to the United

14    States and the excitement together with the joy in coming to

15    the United States turned out to be nothing more than a disaster

16    in my life.

17            All the promises and inducements were nothing more

18    than lies and deceits.  I was seduced by Mr. Condo and all of

19    this turned out to make my life a disaster.  Here I am full of

20    regrets for what I have done, for what I have failed to do,

21    full of compassion for the innocent people that I don't know

22    personally.

23            I'm not here today in this courtroom to judge others.

24    I did a lot of wrong things, even lately with all the pleas and

25    the translations and all the legal documents, but it's still my

1   fault.  I should -- I was in a way amazed by the powers of

2   United States and the advanced level, and I wanted to learn

3   more for my country, Greece, and I was impressed with the

4   endorsement of people like the Governor of Florida, which is of

5   Greek origin.

6           I'm sorry.  I'm deeply sorry.  I'm deeply remorseful

7   and regretful.  How am I going to go back to my country after

8   having gotten myself involved with transactions that people

9   have lost their money?  Working with integrity and honesty my

10  entire career in Greece, in my country, what really matters is

11  a good reputation and reliability, and I have lost both.  My

12  name is all over the Internet and in the front pages of the

13  newspapers due to my own negligence, Your Honor, and the

14  Government, by becoming involved in a fraud case.  Scripture

15  says a good name is to be chosen rather than great riches.

16          For about 13 months now I have been incarcerated for

17  my acts, but my parents, my brothers, my wife and children,

18  they don't deserve to be left without a son and brother and

19  husband or a father.  They have no say or opinion in the paths

20  that I have made, yet they are paying a bigger price and

21  suffering for that.  They don't deserve.  I've lost my way,

22  Your Honor.

23          In searching for having a better life and to make

24  something good for my family and for my country, 2,300 jobs to

25  be offered through the investments I choose to make when the

1    336,000 went to Greece, I have no motive to do anything other

2    than follow a dream that turned into a nightmare.

3           Your Honor, when I go back to my country I will be

4    able to start compensating the innocent victims.  I have a job

5    offer as of today.  So the restitution will start upon my

6    release from incarceration.

7           As you know, I have a very old mother and a very old

8    father, and I'm terrified that I will not be able -- I'm sorry

9    -- to bury my parents with my own hands.  I will not -- I'm not

10   even sure if I will be able to walk my daughter down the aisle

11   on her wedding day.

12          I have hurt the people.  I have hurt many people.  I

13   pray that I get the chance to make up this lost time after

14   that.

15          I would like to take a moment now to thank my family

16   for all their love and support during this most difficult

17   process.  I would like to thank my brother, my first cousin,

18   who came all the way from Greece to the United States to be

19   here today at this hearing.  I would also like to thank the

20   holy church, my church, of how much they supported me here

21   and sending a representative to support me and my family, the

22   Greek government as well, with representatives from the general

23   Consulate in Boston.  Your Honor, I would like to thank my

24   attorneys as well for their professionalism and for all the

25   human compassion towards me during this most difficult process.

1    Thank you, Andrew.  Thank you, Carol.

2          There is also a man who was kind to help me to write

3    this letter because of my English.  He helped me write this

4    elocution letter.  I would like to thank him for his help.

5          In closing, Your Honor, I would like to thank you,

6    Your Honor, and the Government, Mr. Grant, for giving me this

7    time to speak and express the things that I have expressed here

8    today.  All I can ask, Your Honor, of this Honorable Court is

9    for a fair and compassionate decision.  Thank you.  Lord have

10   mercy on me.  Thank you.

11         THE COURT:  Do counsel know of any reason why

12   sentencing ought not to be imposed at this time?

13         MR. GRANT:  No, Your Honor.

14         MR. LEVCHUK:  No, Your Honor.

15         THE COURT:  Then please stand, Mr. Georgiadis.

16         I accept your statement made during your elocution,

17   which is what we call a statement of the defendant just before

18   he or she is sentenced, as being sincere.  I believe that you

19   are remorseful now for your conduct.  You've said many things

20   during these past few minutes, and I want to comment on just a

21   few.

22         You mentioned that it was your own negligence that got

23   you involved in this and that you had made a mistake.  I want

24   to correct that.  You weren't negligent and you didn't make a

25   mistake.  You committed a crime, and that's different than

1    negligence or a mistake, and it is necessary for you to

2    acknowledge to yourself that you committed a crime and that you

3    are going to pay for that crime.  And you have to think about

4    that during the time of your incarceration to allow you to get

5    out and to make recompense, as you have said that you will, not

6    only to the victims of this crime but to the innocent people,

7    your family, and those people who have supported you.  You are

8    going to have the rest of your life, and that will be hopefully

9    a considerable amount of time, to make up for your conduct, for

10   your unexplainable conduct.

11       Mr. Georgiadis, this is a sad day not only for you but

12   for this court.  There is no reason for you to be here.  And

13   you wouldn't be here but for your greed and insatiable desire

14   to make a lot of easy money by defrauding reputable developers.

15   You are smart, well-educated and could have been successful in

16   the financial and business world just as you had been in the

17   past, but you chose instead to join a massive fraud conspiracy

18   to steal millions of dollars from hardworking developers, most

19   of whom had admirable projects in mind as to which they risked

20   and mostly lost hard-earned capital.

21       As I told your co-conspirator, the leader of your

22   crime spree, Mr. Condo, when I sentenced him earlier this

23   summer, he would have been sentenced to well more than ten

24   years imprisonment had he not early on expressed his

25   willingness to plead guilty and to accept full responsibility

1    for his and your egregious crimes.  That was very significant

2    in this case, as argued by the Government's counsel in his

3    memorandum.  And although Mr. Condo was surely more culpable

4    than you were, he was deserving of a substantial discount to

5    which you are not entitled.  You are not being punished for

6    exercising your right to go to trial.  But you will be

7    sentenced to a term of imprisonment commensurate with the

8    terrible harm you have inflicted upon your victims.

9            I have to be concerned today with their welfare as

10   well as yours, and I need to impose a sentence upon you, as I

11   have already imposed upon your co-conspirators, that will not

12   only deter you from such criminal conduct in the future, but

13   will also deter others who may emulate your crimes and

14   irreparably hurt real people.

15           Pursuant to the Sentencing Reform Act of 1984 and

16   having considered the sentencing factors enumerated in Title 18

17   of the United States Code, Section 3553(a), it is the judgment

18   of this court that you, Evripides Georgiadis, are hereby

19   committed to the custody of the Bureau of Prisons to be

20   imprisoned for a term of 102 months.  This term consists of

21   terms of 60 months on Count 1 and terms of 102 months on Counts

22   2 through 12 and 16, to be served concurrently.

23           No supervised release is imposed because you do not

24   have the ability to pay a fine, as well as -- I'm going to say

25   that again.

1          No supervised release is imposed because it is likely

2    you are to be deported and will not be available for

3    supervision, and no fine is going to be imposed because you

4    will not be able to pay a fine in addition to the restitution.

5          It is ordered that you shall make restitution

6    totalling 7 million dollars to those victims listed in the

7    presentence report and in the amounts listed next to their

8    victim numbers on pages 27 and 28 in the aggregate of 7 million

9    dollars.

10          Any payment made that is not payment in full shall be

11   divided proportionately among parties named and the restitution

12   shall be paid by you jointly and severally with the co-

13   defendants, John Condo, Michael Zanetti and Frank Barecich.

14   Payment of the restitution shall begin immediately and shall be

15   made in accordance with the requirements of the Federal Bureau

16   of Prisons inmate financial responsibility program while you

17   are incarcerated.  All restitution payments shall be made to

18   the clerk of the United States District Court or transferred to

19   the identified victims.  You should notify the United States

20   Attorney for this district within 30 days of any change of

21   mailing or residence address that occurs while any portion of

22   the restitution remains unpaid.

23          The court grants the United States' motion for entry

24   of an order of forfeiture in the form of personal money

25   judgment and orders you to forfeit the sum of 7 million dollars

1   jointly and severally with the co-defendants, John Condo,

2   Michael Zanetti and Frank Barecich, with a credit of $43,705

3   seized from 22 bank accounts named in the forfeiture

4   allegation.

5          It is further ordered that you shall pay to the United

6   States a special assessment of $1,300 which shall be due and

7   payable immediately.

8          Mr. Georgiadis, you have a right to appeal this

9   sentence.  If you choose to appeal, you must do so within 14

10  days.  If you cannot afford an attorney, an attorney will be

11  appointed on your behalf.  Do you understand that?

12         Is there any further business to come before the court

13  in these proceedings?  Mr. Grant.

14         MR. GRANT:  Your Honor, I'm just -- the pronouncement

15  that you just made about the restitution, I assume that's --

16  we're about to have a restitution hearing.

17         THE COURT:  Yes.

18         MR. GRANT:  So I think when you said the other

19  co-defendants, you kind of referenced the future hearing.

20         THE COURT:  Good point, Mr. Grant.  I will reserve the

21  final statement of restitution until after the hearing that is

22  going to commence immediately upon the adjournment of this

23  proceeding.

24         Mr. Levchuk.

25         MR. LEVCHUK:  Nothing further, Your Honor.

1          THE COURT:  All right.  I believe also I mentioned the

2     Government's motion for an order of forfeiture.  That motion is

3     allowed.

4          MR. GRANT:  Yes, Your Honor.

5          THE COURT:  We are adjourned.  The defendant does not

6     have to remain for this next proceeding.  So he may be excused.

7          THE CLERK:  The defendant is remanded.

8          (4:14 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T E

3

4

5    UNITED STATES DISTRICT COURT )

6    DISTRICT OF MASSACHUSETTS    ) ss.

7    CITY OF BOSTON                )

8

9

10          I do hereby certify that the foregoing transcript,

11   Pages 1 through 35 inclusive, was recorded by me

12   stenographically at the time and place aforesaid in Civil

13   Action No. 11-cr-30017-NMG, UNITED STATES OF AMERICA V. JOHN

14   CONDO, Et Al. and thereafter by me reduced to typewriting and

15   is a true and accurate record of the proceedings.

16          Dated November 17, 2014.

17

18                          /s/ Kathleen Mullen Silva

19                          _____

20                          KATHLEEN MULLEN SILVA

21                          COURT REPORTER

22

23

24

25